Law Office of James McGee, PLC
Steven Parnell Weaver
CA Bar #243000
325 W. Hospitality Lane, Suite 212
San Bernardino CA 92408
steven@mcgeeplc.com
909-571-5599

UNITED STATES CENTRAL DISTRICT COURT

STATE OF CALIFORNIA

| | |
|---|---|
| Angela Corona; Elizabeth Campbell; Elizabeth Middleton; Margo Johnson; Mary Thompson; Georgette Breland, Lynda Axell; Geneva Williams; Gloria Brooks,<br><br>　　　　　PLAINTIFFS,<br>vs.<br><br>State of California, California Department of Corrections, Tina Dhillon, Charles Ugwu-Oyu, Dr. Navarro and DOES 1-10, inclusive,<br><br>　　　DEFENDANTS | Case No.:<br>COMPLAINT FOR DAMAGES:<br>42 U.S.C. Section 1983 and 1988:<br>- Failure to Protect from Harm<br>-Excessive Force;<br>- Violation of 42 U.S.C §12101 et seq. (ADA);<br>- Violation of 29 U.S.C §794(a) (Rehabilitation Act)<br><br>**DEMAND FOR JURY TRIAL** |

## <u>NATURE OF ACTION</u>

1.     This Complaint is an action for money damages brought pursuant to

42 U.S.C. Sections 1983 and 1988, 42 U.S.C §12101 et seq. (ADA); 29

U.S.C §794(a) (Rehabilitation Act), the Fourteenth Amendment of the

1

United States Constitution and California Law against the California Department of Corrections, inclusive, and hereby allege as follows.

## **PRELIMINARY STATEMENTS**

2.      This Civil Rights, ADA and Rehabilitation Act suit seeks compensatory and punitive damages for serious physical injuries sustained by Angela Corona (PAC), Elizabeth Campbell (PEC), Elizabeth Middleton (PEM), Margo Johnson (PMJ), Mary Thompson (PMT), Georgette Breland (PGB), Lynda Axell (PLA), Geneva Williams (PGW) and Gloria Brooks (PGR), (Plaintiffs), who were either forcibly or involuntarily sterilized at California penal institutions.

3.      The State of California, through the Forced Sterilization or Involuntary Sterilization Compensation Program, has received a claim from all of the PLAINTIFFS and have either paid a claim in a capped amount of $35,000 or denied the claim administratively.

4. As a result of the sterilizations, PLAINTIFFS have been forever changed and the state has acknowledged its wrongful part in this practice as codified in law under CA Health and Safety Code § 24210. Establishment of Forced or Involuntary Sterilization Compensation Program; purpose of program; definitions.

2

Complaint for Damages

5.      PLAINTIFFS believe the amount arbitrarily paid was inadequate to account for the harm done to them.

## JURISDICTION AND VENUE

6.      This case arises under 42 U.S.C. § 1983 and 1988, 42 U.S.C §12101 et seq. (ADA); 29 U.S.C §794(a) (Rehabilitation Act), the Fourteenth Amendment of the United States Constitution and California Law. This court has subject matter jurisdiction over PLAINTIFF's federal question and civil rights claims pursuant to 28 U.S.C. §§ 1331 and 1343.

7. This Court has jurisdiction over PLAINTIFF's supplemental state law claims under 28 U.S.C. §1367 as those claims arise out of the same transactions and occurrences as PLAINTIFF's federal question claims.

8. This Court has the authority to grant the requested declaratory relief pursuant to 28 U.S.C. §§ 2201, as well as Federal Rules of Civil Procedure 57, including pursuant to the Court's inherent equitable powers.

9.      Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b)(2) because all incidents, events, and occurrences giving rise to this action occurred in the County of Riverside, California.

10.     The formal grievance process was exhausted by PLAINTIFFS. Notice of a claim was presented by PLAINTIFFS to the Forced Sterilization or Involuntary Sterilization Compensation Program and the PLAINTIFFS received compensation or were denied. The claim stated the time, place, cause, nature, and description of matter causing any injuries.

11. DEFENDANTS waived immunity by accepting and paying claims without waivers.

### **PARTIES**

12.     At all relevant times, PAC, was an individual residing in the County of Madera County, California.

13.     At all relevant times, PEC,  was an individual residing in the County of Madera County, California.

14.     At all relevant times, PEM, was an individual residing in the County of Riverside, California.

15.     At all relevant times, PMJ, was an individual residing in the County of Riverside, California.

16.     At all relevant times, PMT,  was an individual residing in the County of Riverside, California.

17.     At all relevant times, PGB,  was an individual residing in the County of Riverside, California.

Complaint for Damages

18.   At all relevant times, PLA was an individual residing in the County of Riverside, California.

19.   At all relevant times, PGW was an individual residing in the Madera County, California.

20.   At all relevant times, PGBr was an individual residing in the Madera County, California.

21.   At all material times, Defendant CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION ("CDCR"), was an agency of the State of California.

22.   At all material times, Defendant STATE OF CALIFORNIA employed all individual Defendants in this action, and all individual Defendants acted within the course and scope of their employment to CDCR.

23.   Defendant Tina Dhillon was a Doctor performing sterilizations without consent or with limited consent and were working for CDCR at the time of this incident and was an individual working in the County of Riverside or Madera, California.

24.   Defendant Charles Ugwu-Oyu was a Doctor performing sterilizations without consent or with limited consent and were working for CDCR at the time of this incident and was an individual working in the County of Riverside or Madera, California.

Complaint for Damages

25.   Defendant Dr. Navarro was a Doctor performing sterilizations without consent or with limited consent and were working for CDCR at the time of this incident and was an individual working in the County of Riverside or Madera, California.

26.   Defendant DOES 1-10 are all Doctors performing sterilizations without consent or with limited consent and were working for CDCR at the time of this incident.

27.   Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 10 ("DOE Defendants") and therefore sue these Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will amend their complaint to state the names and capacities of each DOE Defendant when they have been ascertained.

28.   Dr DOES 1-10 were acting under color of state law and within the course and scope of such employment with the CDCR in conducting a policy of forced sterilization.

29.   Defendant STATE OF CALIFORNIA operates, manages, directs and controls Defendant CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION   (hereinafteralso  "CDCR"),   which employed

6

Doe Defendants in this action. At all times relevant to the facts alleged herein, Defendant STATE and CDCR were responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees, including CDCR employees and the California Correctional Health Care Services (hereinafter also "CCHCS") employees, complied with the laws and the Constitutions of the United States and of the State of California. Defendant STATE, through CDCR and CCHCS, is and was responsible for ensuring the protection and safety of all persons incarcerated at the CDCR correctional facilities.

30.    DOES were acting with the complete authority and ratification of his principal, Defendants STATE and CDCR, at all relevant times.

31.    On information and belief, at all relevant times, DOES 1-5 were residents of the County of Riverside.

32.    At all relevant times, Defendant CDCR is and was a duly organized public entity, form unknown, existing under the laws of the State of California.

33.    In doing the acts and failing and omitting to act as hereinafter described, DOES were acting on the implied and actual permission and consent of STATE and the CDCR.

7

34.   The true names and capacities, whether individual, corporate, association, or otherwise of Defendants DOES 1-5, inclusive, are unknown to PLAINTIFF, who otherwise sues these Defendants by such fictitious names. PLAINTIFF will seek leave to amend this complaint to show the true names and capacity of these Defendants when they have been ascertained. Each of the fictitiously named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

35.   All of the acts complained of herein by PLAINTIFF against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity. Moreover, Defendants and their agents ratified all of the acts complained of herein.

36.   All Defendants who are natural persons, including DOES 1-5, are sued individually and in their official capacities as doctors, researchers, and/or civilian employees, agents, policy makers, and representatives for CDCR.

8

37.    PLAINTIFF suffered injuries as a direct and proximate result of the

Actions of DOES. DOES are directly liable for PLAINTIFF's injuries and

damages under federal law pursuant to 42 U.S.C. § 1983.

38.    Defendants STATE and CDCR are liable for PLAINTIFF's injuries

under federal law and under California law, under the doctrine of

*respondeat superior*. Liability under California law for public entities and

public employees is based upon California Government Code §§ 815.2,

820, and 820.8.


**STATEMENT OF FACTS GIVING RISE TO THE PLAINTIFFS**

**CAUSES OF ACTION**

39.    PLAINTIFFS re-alleges and incorporates the foregoing paragraphs as

if set forth herein and further states that:

40.    Every PLAINTIFF has been sterilized by the CDCR and the STATE

as principles of the agent DOE doctors.

41.    The State has acknowledged the wrongdoing done to the

PLAINTIFFS and have codified it.

42.    The STATE through the Board made payments of $35,000 to each

PLAINTIFF after receiving a claim for payment, or wrongly denied such

claim.

9

43.    The PLAINTIFFS met the criteria to receive payment, being 1.)

Sterilization happened after 1979, 2.) Sterilized while in a state prison or

correctional facility, 3.) The facility was run by the California Department

of Corrections and Rehabilitation, 4.) Sterilization was not required for

emergency life-saving medical reasons, 5.) Sterilization was not due to a

chemical sterilization program for convicted sex offenders, 6.)

Sterilization was for birth control purposes, 7.) You were sterilized under

one of the following conditions :a.) Without consent,, b.) With consent

given less than 30 days before sterilization, c.) With consent given

without counseling or consultation, or d.) With no record or

documentation of giving consent

44.    The PLAINTIFFS filed for the claim, were approved or denied and the

claim did not include any waivers.

45.    The amount of money paid by the STATE was wholly inadequate to

make the PLAINTIFFS whole.

46.    PAC was incarcerated at the Valley State Prison for Women. In 2005,

due to complications with her period, she was informed of and

consented to a half hysterectomy due to a cyst, but instead they did a

full hysterectomy without her consent.  The surgery was done by Doe 1.

She has been denied a claim but has filed an appeal.

Complaint for Damages

47.    PEC was incarcerated at Valley State Prison for Women and on or

about 12/3/2008, she was admitted at Madera Community Hospital.

She was there to have a laparoscopic supracervical hysterectomy but

having found fibroids, "the decision was made to proceed with open

abdominal hysterectomy," without her knowledge and without her

consent.  Her consent explicitly said, "if her ovaries were normal, the

patient does not desire to have them removed".  Her "ovary and tubes

appeared normal". Her ovaries were removed, and she was made sterile

by the DEFENDANTS, Defendant Tina Dhillon and Defendant Charles

Ugwu-Oyu.

48.    PEM was incarcerated at CIW.  She was sterilized by the STATE in

2006.  She went into surgery believing they were only taking out a

fibroid.  She never was informed of the sterilization nor did she give her

consent to it.  She had the fibroid removed at RCMC and at a follow up

visit she was told her ovaries were removed.  She still has side effects

consisting of hot flashes, mood swings, night sweat.  She filed a claim

and was awarded $35,000.00 in compensation by the Victim's

Compensation Board.  The surgery was done by Doe 2.

49.    PMJ was incarcerated at CIW and was sterilized in 2001 at Riverside

Community Hospital.  She was supposed to have a surgery to get two

Complaint for Damages

small fibroid tumors removed and she didn't know  she was made sterile until a few days after she had left from the  hospital.  This was done without her consent.  She filed a claim and was awarded $35,000.00 in compensation by the Victim's Compensation Board. The surgery was done by Doe 3.

50.    PMT was incarcerated at CIW.  She was sterilized by the STATE in 2012 or 2013 because she was having pain due to fibroid tumors.  She was not provided with any other option and was forced to relinquish her ovaries.    She has been having horrible hot flashes since the incident.  She found after the incident that there were other available options that they refused to offer her.  She filed a claim and was awarded $35,000.00 in compensation by the Victim's Compensation Board. The surgery was done by Doe 4.

51.    PGB was incarcerated at CIW, and she was 39 years old in 2000 and she was having issues with her menstruation cycle.  Her Doctor gave her Depro Provera injections and told her she had to take it until her period stopped for a year.  She was not informed that that could cause sterilization.  Dr. Navarro, OB/GYN gave her the shots.  She filed a claim and appealed the decision.

52.    PLA was incarcerated at CIW and during a routine pap smear, a growth of was detected on her ovary.  She was sent out to Riverside Hospital and checked by a doctor there to see if it was cancerous.  She was told that the tumor was cancerous and had to be removed.  Years later, while having a doctor's visit, the doctor inadvertently mentioned that she had a hysterectomy, and that was how she learned about what happened.  She never consented and was told about the taking of her ovaries being a possibility.  She asked how they could do that and was told as a ward of that, they could do anything to her. She filed a claim and was awarded $35,000.00 in compensation by the Victim's Compensation Board. The surgery was done by Doe 5.

53.    PGW was incarcerated at Valley State Prison for Women and was sterilized in either 2006 or 2007.  She was having cramps, and she was told she was going to have surgery and they never told her what for.  They told her about a week after the surgery when she went back to the prison.  She still has pain up to the present moment.  She filed claim and received $35,000.00 in compensation.  The surgery was done by Doe 6.

54.    PGBr was incarcerated at CCW/Valley State Prison, and she had surgery in 2010 and was sterilized without consent.  This happened at Merced Valley Hospital.  She filed a claim and was awarded $35,000.00

in compensation by the Victim's Compensation Board. The surgery was done by Doe 7.

55.   As a result of the actions of the DEFENDANTS, PLAINTIFFS were forced to relinquish their reproductive rights and incurred incalculable loss in the purposeful denial of life choices.

56.   As a result of this incident, PLAINTIFF has endured pain, suffering, emotional and mental distress stemming from the physical reproductive violation.


## **FIRST CLAIM FOR RELIEF**

**Failure to Protect from Harm, Violation of the Eighth Amendment to the United States Constitution (42 U.S.C. § 1983) By PLAINTIFFS As Against INDIVIDUAL DEFENDANTS AND DOES 1 through 10**

57.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs. Defendants and DOES 1 through 10 are liable under the Eighth Amendment given that PLAINTIFFS, convicted prisoners, had the right to be free from "cruel and unusual punishments."

58.    Defendants and DOES 1 through 10 deprived PLAINTIFFS of their

Eighth Amendment right because Defendants S. and DOES 1 through

10 first made the intentional decision to place PLAINTIFFS in an unsafe

condition with respect to treatments while incarcerated.

59.    Defendants and DOES 1 through 10 placed PLAINTIIFS in an unsafe

condition because Defendants and DOES 1 through 10 were well aware

of PLAINTIFFS health condition and the need for adequate medical

care. The  conditions that Defendants and DOES 1 through 10 placed

PLAINTIFFS at substantial risk of suffering serious harm due to being

forcibly sterilized without consent.

60.    Despite the wrong being done to PLAINTIFFS, Defendants

and DOES 1 through 10 did not take reasonable available measures to

abate that risk. Indeed, DOES 1 through 10 did not take reasonable

available measures to abate that risk even though a reasonable doctor in

the same circumstances would have appreciated the high degree of

medical and moral malpractice occurring.  The conduct of Defendants

and DOES 1 through 10 made the consequences of the defendant's

conduct obvious given they were taking ovaries without permission.

61.    DEFENDANTS were subjectively aware of the risk of harm

PLAINTIFFS faced because DEFENDANTS knew of PLAINTIFFS'

Complaint for Damages

condition and the possibility that he could die or face serious medical complications and paid out related claims. The conduct of DEFENDANTS through was objectively unreasonable because any other officer would have addressed PLAINTIFFS' medical needs.

62.    Therefore, when Defendants and DOES 1 through 10 did not take reasonable available measures to abate the risks PLAINTIFFS faced, the conduct of Defendants and DOES 1 through 10 caused PLAINTIFFS to be sterile.

63.    Alternatively, and upon information and belief, Defendants and DOES 1 through 10 made the intentional decision of placing PLAINTIFFS in a condition of confinement which unreasonably exposed them to be sterilized forcefully or without consent. Such condition put PLAINTIFFS at a substantial risk of suffering serious harm from performing medical operations without the PLAINTIFFS knowledge or injecting them with drugs knowing what the consequences would be.

64.    Defendants and DOES 1 through 10 have allowed hundreds and maybe thousands of women to be forcefully or involuntarily sterilized , making the consequences of the defendant's conduct obvious. Defendants and DOES 1 through 10 were subjectively aware of the risk

of harm PLAINTIFFS faced because now they apologize for their actions and offer token damages.

65.    Therefore, by not taking such measures, Defendants and DOES 1 through 10 also caused harm to PLAINTIFFS under this theory of liability.

66.    As a direct and proximate result of Defendants' conduct, the civil right of PLAINTIFFS, as protected by the Eighth Amendment of the United States Constitution, were violated.

67.    Further, PLAINTIFFS experienced physical pain, severe emotional distress, and mental anguish, as well as loss of the chance to make life and reproduce, as damages alleged herein.

68.    Defendants subjected PLAINTIFFS to their wrongful conduct, depriving PLAINTIFF of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights of PLAINTIFFS and others would be violated by their acts and/or omissions.

69.    As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiffs sustained injuries and damages.

70.    The conduct of Defendants entitles Plaintiffs to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law.

Plaintiffs do not seek punitive damages against Defendants STATE nor CDCR.

**SECOND CLAIM FOR RELIEF –Fourteenth Amendment Claim of**

**Excessive Force**

**By**

**PLAINTIFFS As Against INDIVIDUAL DEFENDANTS AND DOES 1**

**through 10**

**(42 USC 1983)**

71.    PLAINTIFFS re-alleges and incorporates the foregoing paragraphs as if set forth herein and further states that:

72.    DEFENDANTS touched PLAINTIFFS in an offensive manner without their consent with excessive force causing a significant injury to their body by taking their ovaries without consent, knowledge or permission, and this use of force was objectively unreasonable;

73.    The actions of the DEFENDANTS resulted in ovaries and the opportunity to have children being taken from the PLAINTIFFS and was intentional, willful, malicious, oppressive, excessive, and unnecessary force under any circumstance;

18

74.    The DEFENDANT acted maliciously and sadistically for the purpose of causing harm, and not in a good faith effort to maintain or restore discipline; and

75.    The DEFENDANTS' actions caused harm to the PLAINTIFF that was foreseeable and in fact resulted in physical and emotional harm to the PLAINTIFF; and the DEFENDANTs are thereby liable for compensatory damages under 42 U.S.C. Section 1983;

76.    There was no need to use any force in this instance, much alone the amount used;

77.    The extent of the injury ranges from mild to extreme pain and unneeded surgery, due to PLAINTIFFS' ovaries being stolen from them.

78.    There was no threat perceived by or made to the DEFENDANTS.

79.    There was no warning or order to comply before this force was used;

80.    PLAINTIFFS further claims all of PLAINTIFFS' attorney's fees and costs incurred and to be incurred in PLAINTIFFS' presenting, maintaining, and prosecuting this action under 42 U.S.C, 1988;

81.    The action of the DEFENDANTS was willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities, and therefore warrants the imposition of exemplary and punitive damages as to DEFENDANTS.

82.   PLAINTIFFS seeks compensatory damages for the violations of their rights, including damages for past and future medical expenses, past and future loss of earnings and decreased earning capacity, physical injuries, past and future pain and suffering, emotional and mental distress stemming from the physical injuries.

83.   PLAINTIFFS also seeks punitive damages, costs, and attorney's fees under this claim.

### THIRD CLAIM FOR RELIEF

**Violation of the Americans With Disability Act of 1990**

**42 U.S.C 12101, *et seq*.)**

**By Plaintiffs As Against Defendants STATE and CDCR**

84.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

85.   Pursuant to 42 U.S.C. § 12132, "Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the

services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

86.    Under Title II of the Americans with Disability Act, the State of California and CDCR are required to make reasonable modifications to avoid discrimination on the basis of disability. The ADA sets an affirmative requirement to act appropriately with respect to prisoners with mental disabilities.

87.    ADA creates an affirmative duty in some circumstances to provide special, preferred treatment, or "reasonable accommodation." Facially neutral policies may violate the ADA when such policies unduly burden disabled persons, even when such policies are consistently enforced.

88.    Discrimination includes a defendant's failure to make reasonable accommodations to the needs of a disabled person based on his physical health. These accommodations include training on how to deal with the physically ill, specialized training of CDCR staff, heightened level of medical care, and diligent surveillance.

89.    Upon information and belief, PLAINTIFFS were suffering from abdominal paid, fibroids, tumors or period complications and reproductive organ issues and the taking of their ovaries substantially limited one or more major life activities. PLAINTIFFS are a "qualified

21

individual with a disability" for purposes of the Americans with Disabilities Act and the Rehabilitation Act.

90.   The State of California and the CDCR are subject to the Americans with Disabilities Act and the Rehabilitation Act.

91.   A person has a disability if he/she has a physical or mental impairment that substantially limits one or more major life activities, a record of such impairment, or is regarded as having impairment.

92.   It was well documented that DEFENDANTS caused the sterilization of PLAINTIFFS, and they have acknowledged such.

93.   Defendants STATE and CDCR denied PLAINTIFFS benefits of the services, programs or activities of the State of California and CDCR because of their disability and subjected them to discrimination. More precisely, upon information and belief, Defendants STATE and CDCR denied PLAINTIFFS benefits by taking their ovaries.

94.   Defendant STATE and CDCR failed to make reasonable accommodations to PLAINTIFFS' medical needs based on his physical health. The failure to provide critical medical information was a denial of the services program or activity based on reproductive status. Defendant STATE and CDCR forever denied PLAINTIFFS benefits of the services, programs or activities to not be sterilized.

22

95.   Defendant STATE and CDCR denied PLAINTIFFS medical treatment by simply removing their ovaries.

96.   There was a purposeful policy toward sterilizing women in custody who were exhibiting obvious symptoms of medical distress. This demonstrates that Defendants were discriminating against PLAINTIFFS because of their disabilities.

97.   Defendants STATE and CDCR were deliberately indifferent to PLAINTIFFS' serious medical condition. Defendants STATE and CDCR had actual knowledge of the substantial risk of harm to PLAINTIFFS and they responded with deliberate indifference by failing to communicate or document their condition until after the fact.

98.   The regulations promulgated by the Department of Justice to implement Part A of Title II of the ADA require each government entity to conduct a self- evaluation of its programs and services (or the lack thereof) related to persons with disabilities:

> (a) A public entity shall, within one year of the effective date of this part [that is, by January 26, 1993], evaluate its current services, policies, and practices, and the effects thereof, that do not or may not meet the requirements of this part and, to the extent modification of any such services, policies, and practices is required, the public entity shall proceed to make the necessary modifications.
> (b) A public entity shall provide an opportunity to interested persons, including   individuals with  disabilities  or

Complaint for Damages

organizations representing individuals with disabilities, to participate in the self-evaluation process by submitting comments.

99.     At the time of the sterilizations, Defendants STATE and CDCR failed to conduct any self-evaluation of procedures and training for its personnel about not sterilizing female inmates without consent, knowledge or by force without such.

100.   Defendants STATE and CDCR violated PLAINTIFFS clearly established rights under the ADA with deliberate indifference.

101.   The violation of PLAINTFFS' rights resulted from a California State policy or custom adopted or maintained with deliberate indifference.

102.   As a direct and proximate result of the Defendants' STATE and CDCR conduct as herein described, PLAINTIFFS suffered damages in the amount to be determined at the time of trial.

103.   PLAINTIFFS re-alleges and incorporates the foregoing paragraphs (67-70) as if set forth herein regarding attorneys fees.

## **FOURTH CLAIM FOR RELIEF**

### **Violation of the Rehabilitation Act**

### **(29 U.S.C. §704(a))**

24

**By Plaintiffs As Against Defendants STATE and CDCR**

104.  Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

105.  The Rehabilitation Act of 1973 ("Section 504") states in pertinent part, provides that "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794(a).

106.  Defendants STATE and CDCR are programs that receive federal financial assistance as defined in 29 U.S.C. § 794(b).

107.  PLAINTIFFS were a "qualified individual with a disability" under the Rehabilitation Act.

108.  Defendants STATE and CDCR violated the Rehabilitation Act by failing to make reasonable accommodations to the needs of PLAINTFFS in dealing with their reproductive rights. It was a reasonable accommodation to get consent or advise them of the need for sterilization, if it was even needed, instead of simply stealing ovaries.

Complaint for Damages

109.  Employees of STATE and CDCR were deliberately indifferent to PLAINTIFFS' serious medical condition. They failed to consider obvious other options in treating PLAINTIFFS' health conditions.

110.  Instead of providing PLAINTIFFS with adequate medical services and fair treatment, Defendants t STATE and CDCR refused to provide him with medical care as his condition deteriorated.

111.  Defendants STATE and CDCR failed to accommodate PLAINTIFFS with the services and programs available to patients with a physical medical condition. There were medical services readily available to PLAINTIFFS, but Defendants STATE and CDCR failed to properly treat PLAINTIFFS, and instead simply sterilized them without consent.

112.  Defendants STATE and CDCR knew of the substantial risk of harm to PLAINTIFFS from his serious, diagnosed condition and they responded with deliberate indifference by failing to communicate or document his condition; failing to place him in Medical where he could be watched; and failing to provide him medical care when PLAINTIFFS was in medical distress.

113.  Defendants STATE and CDCR violated the Rehabilitation Act by failing to conduct any self-evaluation of procedures and training for its

Complaint for Damages

personnel about how to handle communications with jails regarding patients who have a physical medical condition or another disability.

114.  Defendants STATE and CDCR violated the Rehabilitation Act by failing to conduct any self-evaluation of procedures and training for its personnel about how to handle encounters with persons who have a physical medical condition or another disability.

115.  As a direct and proximate result of the Defendants' STATE and CDCR conduct as herein described, PLAINTIFFS suffered damages in the amount to be determined at the time of trial.

116.  PLAINTIFFS re-alleges and incorporates the foregoing paragraphs (67-70) as if set forth herein regarding attorneys fees.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, the PLAINTIFFS demand judgment against each and every DEFENDANT individually and joints as DEFENDANTS and prays for relief as follows:

1.) Compensatory damages in an amount according to proof, which is fair, just and reasonable;

Complaint for Damages

2.) Punitive and exemplary damages under federal and California law, in an amount according to proof and in an amount which is fair, just, and reasonable against each individual DEFENDANT as authorized by law.

3.) All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C 1983 and 1988; California Code of Civil Procedure 377.20 et seq., 377.60 et seq., and 1021.5; California Civil Code 52 et seq., 52.1; and as otherwise may be allowed by California and/or Federal law; and

4.) For such other and further relief as the Court deems just and proper.

Dated: April 10, 2024

_____

Steven Parnell Weaver

ATTORNEY FOR PLAINTIFFS

DEMAND FOR JURY TRIAL

The PLAINTIFF hereby demands a jury trial on each and every count.

Dated: April 10, 2024

_____

Steven Parnell Weaver

ATTORNEY FOR PLAINTIFFS

28

Complaint for Damages